# SMOOT v. DISTRICT OF COLUMBIA.

POLICE REGULATIONS; LICENSES; STEAM DREDGE.

1. The owner of a steam dredge who uses it in his business of dredging and unloading and loading his scows in the Potomac river opposite Georgetown, about 4 feet from the end of a wharf, and employs a man to run the engine aboard the dredge, knowing that the man is not regularly licensed as a steam engineer, violates the act of Congress of February 28, 1887 (24 Stat. at L. 427, chap. 272), which provides that any owner of a steam engine who knowingly employs a steam engineer, as such, who has not been regularly licensed to act as such, shall on conviction by

the police court of the District of Columbia be fined, etc., that act applying to the whole District including that portion of the Potomac river within the District.

2. The entire Potomac river, within the limits of the District of Columbia, is subject to the legislative control of Congress, as well in respect to matters of police as to all other subjects of legislation.

No. 1347. Submitted February 2, 1904. Decided March 1, 1904.

IN ERROR to the Police Court of the District of Columbia.

The COURT in the opinion stated the case as follows:

This case is brought here on writ of error to the police court of the District of Columbia. The information charged that the defendant, Lewis E. Smoot, at said District, on the 28th day of May, in the year 1903, did then and there employ a certain person as an engineer who had not to his, the said Smoot's, personal knowledge, obtained a license as an engineer, contrary to and in violation of an act of Congress, approved February 28, 1887. The defendant pleaded to this information the plea of not guilty; and was tried before the court and found guilty, and was sentenced to pay a fine of $10, and in default of payment to be imprisoned in the workhouse for thirty days.

At the trial before the judge, proof was given tending to sustain the prosecution. It was shown in proof that the defendant was the owner of a vessel, or steam dredge, with an engine aboard, used for dredging and loading and unloading scows of the defendant on the Potomac river; that the vessel was in the Potomac river opposite Georgetown, D. C., about 4 feet from the end of the wharf; that the vessel belonged to the defendant, and had aboard a man running a stationary engine, who, being asked whether he had a license, said he had none.

The defendant insisted that a license in such case was not required. He was examined as a witness in his own behalf, and he testified: That he was engaged in dredging sand from the bottom of the Potomac river, and selling it to the trade, to the government of the United States, and to the District of Colum-

bia; that he is the owner of the steam dredge that was being operated at the foot of Thirty-second street, Georgetown, D. C., on May 28, 1903; that the vessel was then and has always been engaged in commerce on the public navigable waters of the Potomac river, and accompanies the sand scows, and is necessary to the loading and unloading of said scows, and is towed from point to point in various harbors, and can be towed anywhere in the United States; that the vessel is not propelled by its own steam, and for that reason does not require a license from the United States government; that this vessel can be moved for a short distance by hauling anchors, and for a long distance is moved by tugboats, the same as the scows that it always accompanies; that he carries engineer's license by the United States government aboard his tugs that move the dredge around from point to point in the navigable waters of the Potomac; that the vessel has never been within the pier or harbor lines of the District of Columbia since she was built; that, at the date set forth in the information, she was lying in the public navigable waters of the Potomac opposite Georgetown, D. C., and outside the pier or harbor lines, and was being used to take sand from a scow and putting it on the wharf.

The defendant then asked the court to rule that, upon the whole evidence, he was entitled to be acquitted. Also asked the court to rule, that the authority of the commissioners of the District of Columbia over the Potomac river is limited to waters within the pier lines, and if the evidence showed that the vessel owned by the defendant was not at any time within the pier lines, but was at the time of the offense charged in the information, and prior thereto, in the public navigable waters of the Potomac river without the pier lines, then the police court had no jurisdiction of the case, and the commissioners of the District of Columbia had no jurisdiction to require the defendant to employ a licensed engineer, or to fine the defendant for refusal to do so. These prayers for instruction were refused by the court; and thereupon the defendant asked the court to rule that the vessel as shown by the evidence was engaged in commerce on the public navigable waters of the Potomac river,

within the admiralty jurisdiction of the United States, and subject to that jurisdiction exclusively; and therefore the defendant could not be required to employ a licensed engineer thereon by the commissioners of the District of Columbia, or be fined by the police court for refusal so to employ such licensed engineer. This prayer was also refused by the court; and the defendant thereupon excepted to the refusal of the court to grant the several prayers offered by him, and a bill of exception was accordingly signed by the court.

*Mr. Crandall Mackey,* for the plaintiff in error:

1. The offense should have been prosecuted by, and the information brought in the name of, the United States attorney for the District of Columbia. *United States* v. *Hoskins,* 5 Mackey, 479.

2. The statement of the engineer that he was not licensed was not the best evidence that he was unlicensed, but, even if it were, there was no evidence to show that the defendant was present when the engineer made the statement; nor could such confession of the engineer be evidence against the defendant, even if both were charged under the statute, unless the defendant heard the statement and did not contradict it. *Sparf* v. *United States,* 156 U. S. 185; *Clifton* v. *United States,* 4 How. 247. Guilty personal knowledge is made by the statute a constituent part of the offense, and it must be proved as well as averred. The statute makes the employing of an unlicensed engineer a perfectly innocent thing when the employer is not aware of the circumstance that the engineer is not licensed. It is the guilty knowledge that makes the crime. *United States* v. *Highleyman,* 22 Int. Rev. Rec. 138; *Verono Factory* v. *Murtaugh,* 5 Lans. 17–22; *United States* v. *Kirley,* 7 Wall. 482, and *United States* v. *Claypool,* 14 Fed. 127.

3. It was never intended that the act of February 28, 1887, relating to the licensing of engineers in the District of Columbia, should apply to engineers on vessels engaged in commerce on the public navigable waters of the Potomac. Even in civil

matters the local laws would not apply to such vessels, as admiralty has jurisdiction over barges, lighters, scows, floating elevators, and wharf boats in public navigable waters. *"The General Cass,"* 1 Brown Admr. p. 337; *"The Dick Keyes,"* 1 Biss. (U. S.) 408; *"The Kate Tremaine,"* 5 Bend. (U. S.) 60.

*Mr. A. B. Duvall,* Corporation Counsel, and *Mr. F. H. Stephens,* Assistant, for the District of Columbia.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The prosecution is founded upon the act of Congress of February 28, 1887 (24 Stat. at L. 427, chap. 272), the 6th section of which is as follows:

"Sec. 6. That any owner or lessee of steamboiler or engine, or the secretary of any corporation, who shall knowingly employ a steam engineer, as such, who has not been regularly licensed to act as such, shall, on conviction thereof by the police court of the District of Columbia, be fined fifty dollars, and, in default of payment of such fine shall be confined for a period of one month in the workhouse of the District of Columbia: Provided, that boilers used for steam-heating, where the water returns to the boiler without the use of a pump and injector, or inspirator, and which are worked automatically, shall be exempt from the provisions of this section." And, by § 7 of the act, it is provided: "That the foregoing section shall not apply to engineers who have been licensed by the United States government, or the law of any State."

This act is a police regulation intended as a means of protection to lives and property of the people of the District. The frequent occurrence of accidents and casualties resulting from the want of adequate skill and knowledge in the management of steam engines by those entrusted with their operation renders the regulation one of importance, and justifies its enforcement by criminal prosecution. The defendant conducted a business within the limits of the District of Columbia, in which he employed a steam dredge with an engine aboard, used for

dredging and loading and unloading scows of the defendant on the Potomac river. He owned the dredge and the engine aboard, and had employed a man to run the engine, knowing that the man was not regularly licensed as a steam engineer. This was clearly in violation of the provision of the act of Congress. That act applies to the whole District of Columbia, including the Potomac river as it runs through the District; and the power of Congress to provide for the exercise of police power and regulation over the Potomac river, within the limits of the District of Columbia, is quite as clear as it is in respect to any other portion of the District. The entire river, within the limits of the District, is subject to the legislative control of Congress, as well in respect to matters of police as to all other subjects of legislation.

The defenses set up by the defendant are: That the Commissioners of the District of Columbia have no power over the Potomac river beyond the dock of pier lines; or that the defendant was not liable to this prosecution because the vessel owned by him, and upon which the engine was operated, was engaged in commerce on the public navigable waters of the Potomac river, and therefore within the admiralty jurisdiction of the United States; and that there was no power in the comsioners of the District to require a license to be obtained in such case. But we perceive no ground for any such defenses as those offered by the defendant. The offense of which the defendant has been convicted is one for the violation of a mere police regulation prescribed by the act of Congress, and clearly there can be no question of the power of Congress to prescribe such regulation; and there is no ground for supposing that the Potomac river, a part of the District of Columbia, as defined in the act of cession to the United States, was intended to be excluded from the operation of the act of Congress of 1887. It may be conceded that the act was not intended to apply to the cases of engineers employed in the navigation of steam vessels coming into the harbor from other ports or harbors beyond the District, or to engineers on the steam railroads running into

this District. But the reasons upon which engineers in such cases are exempt do not apply in a case such as the present.

Finding no error in the rulings of the Police Court its judgment must be affirmed; and it is so ordered.

*Judgment affirmed.*